UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TAMIKA L. GAINES,

       Plaintiff,

                             Civil Case No. 18-11879

v.                            Honorable Linda V. Parker

FCA US LLC,

       Defendant.

_____/

## OPINION AND ORDER

This lawsuit arises from Plaintiff Tamika Gaines' previous employment with Defendant FCA US LLC.  Following this Court's March 30, 2020 decision granting in part and denying in part FCA's motion for summary judgment, the following claims of Ms. Gaines remain pending for trial: (i) race and gender discrimination in violation of 42 U.S.C. § 1981 and Michigan's Elliott-Larsen Civil Rights Act ("ELCRA"); (ii) harassment/hostile work environment based on race in violation of § 1981 and the ELCRA; and, (iii) retaliation in violation of § 1981 and the ELCRA.  The matter is presently before the Court on three motions *in limine* filed by FCA.  (ECF Nos. 35-37.)  Ms. Gaines filed response briefs to each motion (ECF Nos. 42-44), and FCA filed reply briefs (ECF Nos. 49-51).

## I.  Standards of Review

District courts have broad discretion over matters involving the admissibility of evidence at trial.  *United States v. Seago*, 930 F.2d 482, 494 (6th Cir. 1991). "Although the Federal Rules of Evidence do not explicitly authorize *in limine* rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials."  *Luce v. United States*, 469 U.S. 38, 41 n. 4 (1984).  "A ruling on a motion is no more than a preliminary, or advisory opinion that falls entirely within the discretion of the district court."  *United States v. Yannott*, 42 F.3d 999, 1007 (6th Cir. 1994).  A court may therefore alter its ruling during trial.  *Luce*, 469 U.S. at 41-42.  Motions *in limine* may promote "evenhanded and expeditious management of trials by eliminating evidence that is clearly inadmissible for any purpose."  *Indiana Ins. v. Gen. Elec. Co.*, 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004) (citing *Jonasson v. Lutheran Child & Family Servs.*, 115 F.3d 436, 440 (7th Cir. 1997)).

"Irrelevant evidence is not admissible."  Fed. R. Evid. 402.  "The rules regarding relevancy, however, are quite liberal[.]"  *Robinson v. Runyon*, 149 F.3d 507, 512 (6th Cir. 1998).  Under the Federal Rules of Evidence, "[e]vidence is relevant . . . if it has *any* tendency to make a fact more or less probable than it would be without the evidence; and . . . the fact is of consequence in determining the action."  Fed. R. Evid. 401 (emphasis added).  The court is not "permitted to

2

consider the weight or sufficiency of the evidence in determining relevancy and 'even if [it] believes the evidence is insufficient to prove the ultimate point for which it is offered, it may not exclude the evidence if it has even the slightest probative worth.'" *Robinson*, 149 F.3d at 512 (quoting *Douglass v. Eaton Corp.*, 956 F.2d 1339, 1344 (6th Cir. 1992)).

Relevant evidence may be excluded, however, "if its probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Evidence is inadmissible "if there is a danger of *unfair* prejudice, not mere prejudice." *Robinson*, 149 F.3d at 514-15 (emphasis in original) (citing Fed. R. Evid. 403). "'Virtually all evidence is prejudicial or it isn't material.'" *Id.* at 515 (quoting *Koloda v. Gen. Motors Parts Div., Gen. Motors Corp.*, 716 F.2d 373, 378 (6th Cir. 1983)) (additional citation omitted).

That evidence in a case involving racial animus may be racially inflammatory "is clearly [an] insufficient [reason] to exclude [it] under Rule 403." *Robinson*, 149 F.3d at 515. This is because "the racially inflammatory nature of the evidence … is precisely why it is probative …." *Id.* "[I]n nearly every discrimination case there are often instances of extremely offensive remarks, caricatures, and jokes. These shocking messages, offensive though they may be to

3

the court and to the jury, comprise the signature element of a discrimination case."
*Id*.

## II.  "Omnibus Motion *in Limine*" (ECF No. 35)

### A.  <u>Noose</u>

FCA seeks to preclude Ms. Gaines from introducing evidence of a
hangman's noose found in March 2019 at its Sterling Heights Assembly Plant
("SHAP"), where Ms. Gaines had been employed until her termination on March
14, 2018.  FCA argues that this evidence is not relevant, as it had nothing to do
with Ms. Gaines' employment or discharge, and that its introduction will confuse
and inflame the jury.  Ms. Gaines contends that this evidence is relevant to her
claims, as it is probative of the work environment and culture at SHAP and reflects
the failure of FCA to control racism within the plant despite its purported anti-
discrimination policies and procedures.

In *Robinson*, the Sixth Circuit upheld the district court's decision to exclude
a photograph of a hangman's noose that a white employee had drawn and
displayed to an African American employee approximately a year after the
plaintiff's termination.  149 F.3d at 511, 514.  The African American employee
complained to her supervisor and would have testified that the supervisor did not
discipline the employee who drew the picture and said only that "he was just a
'frustrated Boy Scout who liked to tie knots.'"  *Id*. at 511.  The Sixth Circuit

4

concluded that the incident "had a tenuous connection to the factual allegations of th[e] case" because it happened a year before the plaintiff's termination and had "no direct connection to any of the supervisors involved in the decision to terminate[.]" *Id.* at 514.

The plaintiff in *Robinson* did not assert a hostile work environment claim, however. *See id.* at 510-11. Ms. Gaines maintains that the public display of the noose "is both relevant and probative of the work environment and culture at SHAP." (ECF No. 42 at Pg ID 1067.) The Court agrees.[1] As courts have explained, a noose "is pregnant with historical and cultural meaning[,]" *Curry v. SBC Commc'ns, Inc.*, 669 F. Supp. 2d 805, 834 (E.D. Mich. 2009), and "'is a symbol not just of racial discrimination or of disapproval, but of terror,'" *Id.* (quoting *Tademy v. Union Pac. Corp.*, 520 F.3d 1149, 1150 (10th Cir. 2008)) (additional citations omitted). The repugnant nature of this symbol is what renders it relevant to a hostile work environment claim and is why, as explained in *Robinson*, it is not prohibited under Federal Rule of Evidence 403 despite its racially inflammatory and prejudicial nature. 149 F.3d at 515.

---

[1] The noose may be even more relevant if it was displayed and ignored by FCA supervisors or human resources officials or if those supervisors or officials failed to respond promptly or discipline the responsible employee(s). *See Robinson*, 149 F.3d at 512-13 ("Evidence of a racially hostile atmosphere that was condoned by the supervisors in [the facility where worked] clearly is relevant … because it illustrates the attitudes of those supervisors.").

As there is no evidence before the Court to suggest that the atmosphere within SHAP changed dramatically between Plaintiff's termination and the displaying of the noose,[2] the incident is not rendered irrelevant by the fact that it occurred a year after Plaintiff's termination.  It has some probative value and may render Plaintiff's description of the racial hostility to which she was directly exposed more believable.  FCA certainly can point out the span of time between Plaintiff's employment and the incident to undermine how much weight the jury should give it and to argue that it could not have contributed to the hostile work environment to which Plaintiff was exposed.[3]  *See Robinson*, 149 F.3d at 515 (quoting *Doe v. Claiborne Cnty., Tenn.*, 103 F.3d 495, 515 (6th Cir. 1996)) ("This court has expressly noted that even in cases of shaky evidence, 'vigorous cross-

---

[2] FCA notes Ms. Shelton's deposition testimony "that the Maintenance Department had 'changed a lot' after she left[.]"  (ECF No. 50 at Pg ID 1156 (quoting ECF No. 29-8 at Pg ID 761).)  This is the exchange surrounding Ms. Shelton's statement:

> Q: All right. Were you ever aware of any racial – racist comments by members of the department?
> …
> A: Towards me?
> Q:  Toward you or just in general.
> A:  I have not witnessed it.  Like I said, it was some – the department did change a lot after I left because, even Kendall Koch, who was also at the body shop working with me, was I GA when I worked there.  No problem with Kendall, George, Nick.  Like I said, there's the other guys on the other shift, but my communication with them was very limited.

(ECF No. 29-8 at Pg ID 760-61.)  It is unclear what Ms. Shelton meant when she stated that the department changed.  She was not asked to elaborate.

[3] The Court can provide a jury instruction, as well.

examination, presentation of contrary evidence, and careful instruction on the

burden of proof are the traditional and appropriate means of attacking' such

evidence, not exclusion.").

### B. Co-Worker's Purported Statements

FCA next seeks to preclude Ms. Gaines from testifying about what FCA

supervisor, Tom Schef, purportedly told her concerning Maintenance Department

Manager Ron McNeil's bias toward African American women.

As described in the Court's summary judgment decision, Mr. McNeill was

on vacation when SHAP's acting plant manager hired Ms. Gaines as a Professional

Maintenance Specialist ("PMS") in SHAP's Maintenance Department.  (ECF No.

33 at Pg ID 939.)  During her tenure, Ms. Gaines was the only African American

and female among the Maintenance Supervisors and PMS's in the department.

(*Id.*)  When Mr. McNeill returned from vacation, he walked through the office

greeting Ms. Gaines' co-workers and, when he reached Ms. Gaines, said: "Where

the hell did you come from?"  (*Id*. at Pg ID at 941.)  When Ms. Gaines shared Mr.

McNeill's comments with Mr. Schef, Mr. Schef advised Ms. Gaines that Mr.

McNeill does not really like black women and feels they do not belong in the

Maintenance Department.  (ECF No. 29-3 at Pg ID 560; ECF No. 29-4 at Pg ID

616.)

FCA argues that Mr. Schef's statements constitute inadmissible hearsay, are irrelevant, and likely to confuse and mislead the jury.  According to FCA, Ms. Gaines "has 'other means' of proving what Mr. McNeill thinks"—that is, she can ask him at trial.  (ECF No. 35 at Pg ID 989.)  Citing *Carter v. University of Toledo*, 349 F.3d 269 (6th Cir. 2003), Ms. Gaines responds that Mr. Schef's statements are not hearsay pursuant to Federal Rule of Evidence 801(d)(2)(D) because they do not attribute a statement to Mr. McNeill but reflect only Mr. Schef's opinion of Mr. McNeill's biases based on Mr. Schef's experiences working with him.

Rule 801(d)(2)(D) provides, in relevant part, that a "statement is not hearsay if … [t]he statement is offered against a party and is … a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship."  Fed. R. Evid. 801(d)(2)(D).  In *Carter*, the Sixth Circuit found the rule applicable to comments by the University of Toledo's Vice Provost concerning the racial animus of the Interim Dean of the University's College of Education, where the plaintiff had been employed.  349 F.3d at 271, 276.  The Vice Provost told the plaintiff that the Interim Dean "is trying to whitewash the college of education" and "was trying to get rid of the black professors …."  *Id*. at 272.  The Vice Provost also said, "they're a bunch of racists over there."  *Id*.  Finding that the statements were made by the Vice Provost in the course of his employment—as he was tasked with ensuring that

8

the university's deans complied with affirmative action requirements when hiring faculty—the Sixth Circuit concluded that they were admissible as circumstantial evidence of discrimination even though the Vice Provost was not involved in the decision-making process regarding the plaintiff's employment.  *Id*. at 275-76.

If Rule 801(d)(2)(D) is inapplicable to Mr. Schef's statements to Plaintiff, the statements would constitute hearsay if Ms. Gaines attempts to present them through her own trial testimony.  They are out-of-court statements by Mr. Schef and are being offered to prove the truth of the matter asserted—that Mr. McNeill is biased against African American women.  The statements may constitute Mr. Schef's opinion about Mr. McNeill, but they remain statements by Mr. Schef.  The question thus becomes whether Mr. Schef's statements concerned a matter within the scope of his agency or employment, made during the existence of that relationship.  *See* Fed. R. Evid. 801(d)(2)(D).  Unlike the Vice Provost in *Carter*, nothing in the records suggests that Mr. Schef was a decision-maker with respect to FCA's personnel decisions or policies or that he had the ability to influence a personnel decision with respect to Ms. Gaines.  Nor does the record suggest that Mr. Schef's comments were otherwise within the scope of his employment.

Plaintiff has listed Mr. Schef as a potential trial witness, however.  (ECF No. 30 at Pg ID 908.)  Hearsay would not be a concern if Mr. Schef repeated his statements during the trial.  Nevertheless, Mr. Schef is precluded from offering his

9

opinion concerning Mr. McNeill's purported racial or gender biases unless Mr. Schef can ground his opinion on observation or other first-hand personal experience.  *See* Fed. R. Evid. 602; *Gordon v. Louisville/Jefferson Cnty. Metro Gov't*, 486 F. App'x 534, 540 (6th Cir. 2012) (quoting *Visser v. Packer Eng'g Assoc., Inc.*, 924 F.2d 655, 659 (7th Cir. 1991)) ("[I]nferences and opinions must be grounded in observation or other first-hand personal experience.  They must not be flights or fancy, speculations, hunches, intuitions, or rumors about matters remote from that experience."); *see also Bohannon v. Pegelow*, 652 F.2d 729 (7th Cir. 1981) (upholding the district court's decision to admit a witness's lay opinion testimony that the plaintiff's arrest was motivated by racial prejudice where the witness was present at the time of the arrest and the opinion was based on personal knowledge and rational perceptions).

In short, Ms. Gaines may not testify to what Mr. Schef said concerning Mr. McNeill's animus toward African American women.  Mr. Schef may provide his opinions at trial, however, provided they are grounded in observation or other first-hand experience.  Contrary to FCA's assertion, such evidence may be the only means to reveal Mr. McNeill's alleged biases, as "[r]arely will there be direct evidence from the lips of the defendant proclaiming his or her racial animus." *Robinson*, 149 F.3d at 513 (citing *Kline v. Tenn. Valley Authority*, 128 F.3d 337, 348 (6th Cir. 1997)).

C.  <u>Other Hearsay Statements</u>

FCA seeks to preclude Ms. Gaines from presenting (i) statements by
unnamed employees in response to her "reply all" email; (ii) warnings about Mr.
McNeill from unnamed employees; (iii) Tyleta Jones' statements about why she
left SHAP; and, (iv) Angela Wilson's letter.  Ms. Gaines indicates that she does not
intend to offer Ms. Jones' statements or Ms. Wilson's letter unless they are called
as trial witnesses.  In that case, the Court does not believe there will be a hearsay
problem and therefore declines to rule them inadmissible at this time.[4]  The Court
also declines to rule on the statements of unnamed employees at this time as the
purpose of their admission—and thus whether they constitute hearsay and are
relevant—is not yet clear.

D.  <u>Plaintiff's Religion</u>

FCA argues that evidence concerning Plaintiff's religion is inadmissible
pursuant to Federal Rule of Evidence 610, which provides: "Evidence of a
witness's religious beliefs or opinions is not admissible to attack or support the
witness's credibility."  Therefore, neither party may offer evidence of a witness's
religion to show that the person is or is not truthful.  However, as there may be

---

[4] As there is no indication as to how Ms. Gaines might attempt to introduce Ms.
Wilson's letter during her testimony, the Court reserves ruling on its admissibility
until that use is attempted and its purpose is clear.

other purposes for which a witness's religion is offered, which are not now presented to the Court, it will reserve ruling on the matter until trial.

### E.  Plaintiff's Unemployment Claim

The Michigan Employment Security Act, Mich. Comp. Laws § 421.11, prohibits the use of information and determinations elicited during the course of an unemployment proceeding before the Michigan Unemployment Insurance Agency in a subsequent civil proceeding unless the MUIA is a party to or complainant in the action.  *Id.* § 421.11(b)(1)(iii); *see also Storey v. Meijer, Inc.*, 429 N.W.2d 169, 173 (Mich. 1988).  Based on this provision, FCA seeks to prohibit Ms. Gaines from introducing evidence related to her unemployment benefits.  Ms. Gaines acknowledges the statute's prohibitions but argues that she can present evidence that she applied for and received unemployment benefits.  Ms. Gaines maintains that such evidence is relevant and admissible, for example to counter any argument by FCA that she did not mitigate her damages.  The Court does not interpret the statute as precluding such evidence *provided* it is relevant to a matter at issue and Ms. Gaines does not offer evidence that she was awarded benefits or the amount awarded.

### F.  Defendant's Wealth and Size

FCA seeks to preclude Ms. Gaines from introducing any evidence concerning its wealth or size, arguing that such evidence is not relevant and is

unfairly prejudicial.  Quoting *Clark v. Chrysler Corporation*, 436 F.3d 594, 604

(6th Cir. 2006), FCA maintains that the admission of such evidence "is improper

and unconstitutional because [it] 'has no connection to the actual harm' allegedly

suffered by [Ms. Gaines]."  (ECF No. 49 at Pg ID 1132.)

Ms. Gaines may be entitled to punitive damages if she prevails in this case.

*See* 42 U.S.C. § 1981a(b).  The financial resources of a defendant may be

considered in fixing the amount of such damages.  *Rodgers v. Fisher Body Div.,

Gen. Motors Corp.*, 739 F.2d 1102, 1109 (6th Cir. 1984); *Pacific Mut. Life Ins. Co.

v. Haslip*, 499 U.S. 1, 21 (1991) (approving instructions that permitted the jury to

consider, among other factors, "the financial position of the defendant" when

assessing punitive damages); *TXO Prod. Corp. v. Alliance Res. Corp.*, 509 U.S.

443, 462 n.28 (1993) (rejecting the defendant's contention that the jury

impermissibly considered its "impressive net worth," noting that it was "well-

settled law" to allow consideration of this factor.).  Accordingly, the Court rejects

FCA's attempt to preclude Ms. Gaines from introducing this evidence at trial.

G.  Evidence or References Concerning the Number of Attorneys
Representing FCA or the Law Firm's Size

FCA argues that evidence concerning the number of lawyers or law firms

representing FCA or the size of those law firms is irrelevant, immaterial, and

prejudicial.  Thus, FCA seeks to preclude Ms. Gaines and her counsel from

presenting such evidence.  Ms. Gaines responds that such information will

necessarily be disclosed during jury selection when introducing counsel. Introducing the attorneys appearing at trial and identifying them and their respective law firms by name, however, does not necessarily require the disclosure of the names of every attorney working on the case on behalf of a party.[5]  Nor does it require the disclosure of information concerning the size of the respective law firms.  There is no relevance to this information.  It is excluded.

H.   <u>Questions Inquiring Whether a Witness Was Lying</u>

FCA wants to preclude Ms. Gaines' counsel from asking a witness to opine on the truthfulness of another witness's testimony.  Ms. Gaines' attorneys indicate that they have no intention of asking such questions.  The Court, therefore, finds no need to address the matter.  To the extent counsel finds a reason to ask such a question as the trial testimony develops, the Court will address the matter then.

III.   Motion <i>in Limine</i> to Exclude Evidence Related to<br>Time-Barred Conduct (ECF No. 36)

Relying on a 180-day limitation period in Ms. Gaines' employment contract (*see* ECF No. 25-3 at Pg ID 233), FCA seeks to preclude Ms. Gaines from introducing evidence related to allegations of discriminatory conduct before

---

[5] FCA does not seem to oppose such introductions, nor could it reasonably do so.

14

December 15, 2017.  In light of *Logan v. MGM Grand Detroit Casino*, 939 F.3d

824, 829 (6th Cir. 2019), this contractual limitation period is unenforceable.

Moreover, the Court denies FCA's motion for additional reasons.  First, Ms.

Gaines is pursuing a hostile work environment claim.  Hostile work environment

claims "involve[ ] repeated conduct" where "[t]he 'unlawful employment practice'

… cannot be said to occur on any particular day. It occurs over a series of days or

perhaps years …." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115

(2002).  The plaintiff must demonstrate that "the workplace is permeated with

discriminatory intimidation, ridicule, and insult that is sufficiently severe and

pervasive to alter the conditions of the victim's employment and create an abusive

working environment."  *Id.* at 116 (citations and quotation marks omitted).

"Provided that an act contributing to the claim occurs within the filing period, the

entire time period of the hostile environment may be considered … for the

purposes of determining liability."  *Id.* at 117; *see Waldo v. Consumers Energy

Co.*, 726 F.3d 802, 816 (6th Cir. 2013); *Jordan v. City of Cleveland*, 464 F.3d 584,

596-97 n.17 (6th Cir. 2006).

Second, while Ms. Gaines may base her discrimination and retaliation

claims only on discrete acts occurring within the applicable limitations period, she

may present time-barred evidence to prove pretext or to establish discriminatory

motive.  *Cantrell v. Knoxville Cmty. Dev. Corp.*, 60 F.3d 1177, 1181 (6th Cir.

1995) (citing cases and "agree[ing] with those circuits following *United Air Lines v. Evans*, 431 U.S. 553, 558 … (1977), that have held that even time-barred acts are admissible as relevant background evidence in a proceeding in which the status of a current practice is at issue."); *see also Clack v. Rock-Tenn Co.*, 304 F. App'x 399, 403 (6th Cir. 2008) ("Here, Clack is not attempting to recover based on Murphy's past statements but, as explicitly allowed by *Morgan*, is simply using them as background evidence to prove pretext."); *Gibson v. Shelly Co.*, 314 F. App'x 760, 767 (6th Cir. 2008) (holding that the plaintiff could use time-barred evidence to support his discrimination and retaliation claims). This is precisely what the Court was conveying in its summary judgment decision (ECF No. 33 at Pg ID 938)—which FCA quotes in its motion *in* limine—when concluding that conduct occurring before the relevant statutory period may be considered as "background evidence" even if it cannot be the basis for Ms. Gaines' discrimination claim.

The Court does not find the incidents described by Ms. Gaines to be sufficiently distant or distinct to render them inadmissible. Notably, Ms. Gaines was employed at SHAP for only 18 months. Therefore, this case is quite unlike *Ejikeme v. Violet*, 307 F. App'x 944 (6th Cir. 2009), where the court precluded evidence of incidents that had occurred almost ten years earlier, *id.* at 949 n.1, and *Barrett v. Whirlpool Corporation*, 704 F. Supp. 2d 746 (M.D. Tenn. 2010), where

almost three years passed between the barred conduct and the incidents that formed the basis of the plaintiff's claims, *id.* at 755.  Further, Ms. Gaines describes conduct similar in character (for example, ostracism) and by the same supervisor and co-workers.

Nor is there an "intervening action" by FCA that renders certain conduct inadmissible.  In *Morgan*, the Supreme Court provided the following illustration to explain when incidents may not constitute one unlawful employment practice:

> [I]f an act on day 401 had no relation to the acts between days 1-100, or for some other reason, such as certain intervening action by the employer, was no longer part of the same hostile environment claim, then the employee cannot recover for the previous acts, at least not by reference to the day 401 act.

536 U.S. at 118.  The Supreme Court did not identify what type of conduct constitutes an "intervening action."  In *Watson v. Blue Circle, Inc.*, 324 F.3d 1252 (11th Cir. 2003), cited by FCA, the court found that prompt action by the employer to effectively resolve harassment by a specific individual constituted "intervening action" which rendered previous conduct by that individual no longer part of the same hostile work environment claim.  *Id*. at 1258-59.  But here, viewing the evidence in the light most favorable to Ms. Gaines, a reasonable jury could find that FCA did not effectively respond to the alleged mistreatment of Ms. Gaines.  A jury also could find that the same type of harassment continued regardless of anything FCA may have done.

17

For these reasons, the Court declines to exclude evidence of conduct preceding the relevant limitations period.  An instruction can prevent the jury from being confused or prejudiced by the introduction of this evidence.

### IV.  Evidence Related to Danita Shelton (ECF No. 37)

FCA seeks to preclude Ms. Gaines from introducing evidence related to Danita Shelton, an African American woman who worked in the Maintenance Department at SHAP but left a few months before Ms. Gaines' arrival.  This evidence consists of Ms. Shelton's testimony concerning: (i) Mr. McNeill's alleged statements in January 2016, made during a discussion about delivering bottled water to the citizens of Flint during the water crisis there (*see* ECF No. 33 at Pg ID 940 (citing ECF No. 29-8 at Pg ID 739-42)); and, (ii) a statement by co-worker Dan Kowalski that white men are "an endangered species," (*see* ECF No. 29-8 at Pg ID 761).  It also consists of evidence concerning FCA's investigation into Ms. Shelton's complaints about these comments.  FCA contends that because the statements were neither directed at Plaintiff nor made in her presence, predated her arrival by eight months, and were unknown to her, they are irrelevant and unduly prejudicial.

In *Spring v. Mendelsohn*, 552 U.S. 379 (2008), the Supreme Court instructed that there is no *per se* rule requiring the exclusion of, or mandating the inclusion of, evidence of allegedly discriminatory acts that are not part of the actions

18

complained of by the plaintiff.  *Id.* at 380.  The relevance of such "other acts"

evidence "depends on many factors, including how closely related the evidence is

to the plaintiff's circumstances and theory of the case."  *Id.* at 388.  The Sixth

Circuit has advised that the admissibility of such evidence should be determined on

a case-by-case basis.  *Griffin v. Finkbeiner*, 689 F.3d 584, 598 (6th Cir. 2012).

The Sixth Circuit has identified several relevant factors for deciding whether

"other acts" should be admitted or excluded:

> (1) whether the evidence is logically or reasonably tied to the
> decision made with respect to the plaintiff; (2) whether the
> same "bad actors" were involved in the "other" conduct and in
> the challenged conduct; (3) whether the other acts and the
> challenged conduct were in close temporal and geographic
> proximity; (4) whether decision makers within the organization
> knew of the decisions of others; (5) whether the other affected
> employees and the plaintiff were similarly situated; and (6) the
> nature of the employees' allegations

*Schrack v. RNL Carriers, Inc.*, 565 F. App'x 441, 445 (6th Cir. 2014) (citing

*Griffin*, 689 F.3d at 599).  Consideration of these factors leads the Court to

conclude that the "other acts" evidence related to Ms. Shelton is admissible.

Ms. Shelton and Ms. Gaines are both African American women, and each

was the sole African American woman working in SHAP's Maintenance

Department during their respective tenures.  Both worked under the supervision of

Maintenance Manager Ron McNeill and with many of the same white, male co-

workers.  When Mr. McNeill returned from vacation and discovered Ms. Gaines

working in his department, his first words to her were: "Where the hell did you come from?"  (ECF No. 29-3 at Pg ID 523.)  When Ms. Gaines asked her co-workers to explain the comment, she was told by Maintenance Supervisor Bob Lentz: "We already got rid of one of you."  (*Id.* at Pg ID 523-24.)  It is not difficult to conclude that Mr. Lentz was referring to Ms. Shelton and, therefore, that there was hostility toward African American women in the department.

The "other acts" arose in the department and involved Mr. McNeill and Mr. Kowalski—individuals who Ms. Gaines claims made discriminatory remarks and contributed to the racially hostile work environment.  The Court has found a genuine issue of material fact as to whether Mr. McNeill took action intending to cause Ms. Gaines' termination.  The events involving Ms. Shelton are sufficiently close in time to those that form Ms. Gaines' claims to be relevant.  While Mr. McNeill's and Mr. Kowalski's comments may not have been directed at Ms. Shelton personally, as FCA argues, they do reflect the same type of racist and sexist animus that Ms. Gaines claims were directed at her.[6]  The evidence is relevant to Mr. McNeill's and Mr. Kowalski's animus and motive.

---

[6] To argue that Mr. McNeill's statements are irrelevant to Ms. Gaines' claims of racial harassment and discrimination, FCA repeats its conclusion after "investigating" Ms. Shelton's complaints—that is, that his "alleged comments related to socioeconomic status as much as race, and therefore the comments say little about his reasons for making them …."  (ECF No. 50 at Pg ID 1157; ECF No. 29-8 at Pg ID 744, 745.)  The Court believes that a jury might disagree and

Moreover, viewed in a light most favorable to Ms. Gaines, she was aware of Ms. Shelton's experiences at SHAP as the two women discussed it.  (*See* ECF No. 25-2 at Pg ID 146; ECF No. 29-8 at Pg ID 759-60.)  It was against this backdrop that Ms. Gaines viewed the actions and comments directed at her, which she believes constituted racial harassment.

For the reasons discussed in *Reynolds*, while this "other acts" evidence is undoubtedly prejudicial, it is not unfairly so.

In short, the Court denies FCA's motion to preclude Ms. Gaines from introducing evidence related to Ms. Shelton.

## V.  Conclusion

For the reasons set forth above, the Court is **granting in part and denying in part** FCA's Omnibus Motion *in Limine* (ECF No. 35) and **denying** FCA's remaining motions *in limine* (ECF Nos. 36 & 37.)

**IT IS SO ORDERED**.

s/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: March 1, 2021

---

conclude that Mr. McNeill's comments were profoundly racially offensive and that FCA failed to respond appropriately.